UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CR-20982(s)-GAYLES/OTAZO-REYES

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAUL SANTOS FERRO,

        Defendant.

_____/

## DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCING

COMES NOW, undersigned Counsel for Defendant Saul Santos Ferro and files this, his Memorandum in Support of Sentencing which is scheduled for September 27, 2019 at 3:30 p.m. and would furthermore ask this Honorable Court to consider the following, in addition to friends, family and supporters of Mr. Santos Ferro who will be appearing at the Sentencing in determining a just Sentence in this matter.

## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Defendant Santos Ferro would respectfully submit that paragraphs 15 through 18 contained within the Presentence Investigation Report should be deleted from said report. Although informative, this information is potentially prejudicial with regard to Mr. Santos Ferro's possible incarceration and should not be included in this report. As the Court is aware, the Presentence Investigation Report is utilized by the Bureau of Prisons in determining classifications or designations of those individuals sentenced to incarceration.

1

Inclusion of this language would potentially have an unnecessary prejudicial effect on Mr. Santos Ferro's designation, assuming this Honorable Court were to sentence him to incarceration. Accordingly, the undersigned would respectfully request that these paragraphs be deleted from the Presentence Investigation Report.

## SAUL SANTOS FERRO

On December 20, 2018, now 74 year old defendant Saul Santos Ferro was indicted by the United States and charged with a violation of Title 18 U.S.C. Section 1546(a), making a false statement in an immigration document on or about December 23, 2013. This indictment was returned within three days of the expiration of the five year limitation period. Mr. Santos Ferro was arrested without incident on February 6, 2019, by agents of the Government at his son and daughter-in-law's Miami residence where he had been residing.  Subsequent to his arrest, Mr. Santos Ferro submitted to an interview with the agents and was completely cooperative.  In that interview, he was shown the relevant immigration documents which comprise the allegations in Count one of the indictment (form I-485) and admitted that he had not been truthful in filling out the form. Specifically, he failed to disclose, inter alia, his military affiliation and the fact that he worked for the Cuban government. When interviewed by Government agents, without hesitation, Mr. Santos Ferro admitted that while in Cuba he worked for the Ministry of Interior as a Major in the Department of State Security and held other positions within the Cuban government. Furthermore, he informed agents that he had joined the Department of State Security in 1963.  As stated in the Presentence Investigation Report, he advised the agents that one of

the functions of the Department of State Security was to prevent groups from organizing to destabilize and/or overthrow the Cuban Government.  He also readily admitted that when he completed an application for a visa to visit the United States, he did not include those facts—that is, that he had been a member of the Ministry of the Interior, military or affiliated with the Cuban government, because he knew that if he had included that information, his application for a Visa would have been denied. He told FBI Special Agent Eduardo Urtiaga that the only reason he did not disclose details of his past affiliation with the Cuban government was because he knew if he did, he would not be allowed into the United Sates and subsequently would not be allowed to stay in the United States. It is critical to note that Mr. Santos Ferro's sole motivation in coming to the United States was to be with his children and grandchildren and for no other reason.  He wanted to be with his family and live out his remaining years with his family by his side. (Attached is an excerpt of the transcript of Mr. Santos Ferro's interview with the FBI.) It must be noted that Mr. Santos Ferro was candid with the agents, who acknowledged this as well.

On April 25, 2019, the Government filed a Superseding Indictment adding an additional Count of theft of Government funds, in violation of Title 18 U.S.C. Section 641. This indictment was filed approximately twenty-seven days before the setting of the trial in this matter. It is believed that the information regarding Count 2 was the product of an investigation which commenced after Mr. Santos Ferro informed the agents that he was receiving Social Security benefits.

Mr. Santos Ferro is 74 years old.  His daughter Mabys Santos, and son Saul Santos Baez, have resided in Miami since in or about 2000.  Defendant Santos Ferro, who is

advancing in age, longed to be reunited with his children and grandchildren in Miami, just as they longed to be reunited with their aging father/grandfather. His family is a loving and close unit and as stated above, his sole motivation for coming to the United States was to be with them in his remaining years. (See attached photos of Mr. Santos Ferro with his children and grandchildren). He knew that in order to be admitted into the United States, he would have to fabricate answers on his immigration forms with regard to questions concerning his past involvement with the Cuban government. While this was not something he wanted to do, he did so out of love for his family, and for no other reason.

An understanding of Mr. Santos Ferro's history is necessary to better understand his mindset that led him to commit the offense outlined in Count 1 of the Superseding Indictment. Mr. Santos Ferro was born in Cuba in 1945. In 1959, Cuba's U.S. backed dictator, Fulgencio Batista, imprisoned Mr. Santos Ferro's father. At the time, Mr. Santos Ferro was only fourteen years old. Shortly thereafter, Fidel Castro came into power and Mr. Santos Ferro's father aligned himself with Castro in order to gain his freedom from prison. Given Defendant Santos Ferro's own young age and the prior incarceration of his father, he virtually had no choice for survival other than to align himself with Fidel Castro and his regime as well. This was the only way of life that he knew and he worked in the Cuban Government until 1995 when he retired. He subsequently drove a taxi to make ends meet.

Mr. Santos Ferro came to the attention of authorities after being observed shopping in a supermarket in Miami-Dade, Florida by an individual who claims to have been interrogated by Mr. Santos Ferro in Cuba while he was working with the Cuban

Government. That individual surreptitiously took a photo of Mr. Santos Ferro, his wife and daughter while shopping, then posted it on the social media platform, Facebook. The picture went "viral" and was observed by others on the internet including an anti-Castro watchdog group (Cuba Repression, ID) who alerted the authorities of Mr. Santos Ferro's presence in the Miami-Dade County area who presumably insisted on the prosecution of Mr. Santos Ferro and shortly thereafter, he was indicted by the U.S Department of Justice out of Washington which hailed the arrest of Mr. Santos Ferro with a press release. (See attached).

In addition, an investigation commenced with regard to Social Security benefits which Mr. Santos Ferro and his wife regretfully collected. The facts of the case are as such: There was a period of time when Mr. and Mrs. Santos Ferro were not residing together because it was logistically difficult for them to do so. They were residing with their two children (who live in separate residences) at different times and then ultimately moved in together and then separated again. During the small period of time when they were living apart, they applied for separate benefits, thereby defrauding the Social Security system. Ultimately, Mr. Santos Ferro pleaded guilty for misrepresenting the fact that there was a period of time when he was not residing with his wife when they applied for separate benefits. Ultimately, they lived together, however, were still receiving benefits as if they lived separately, which provided for a larger payment. Mr. Santos Ferro, not being completely versed in the rules and regulations of the Social Security Benefits system, advised a Social Security Benefits officer that he was not residing with his wife and accordingly they were approved to receive separate benefits. Nonetheless, he has accepted

complete responsibility, recognizes he was deliberately ignorant of the rules and law and recognizes his obligation to repay the money to the Government.

It is certainly understandable that those persecuted by Fidel Castro would be motivated to insure that anyone who supports or supported Castro be banished from this country. To reiterate, Mr. Santos Ferro was a young boy when his own father was jailed by the regime that was subsequently removed from power by the Castro regime. He grew up as part of a Communist system and knew no other way of life. Since his retirement in 1995, he has had no affiliation or involvement in any Cuban government activities. Quite simply, as has been parroted throughout this submission, his only desire was to live out his remaining years close to his family.

Defendant Santos Ferro has entered into a Plea Agreement which if accepted by this Honorable Court, would result in an Offense Level of 10 and a Criminal History Category of I with an Advisory Sentencing Guideline Range of 6-12 months in Zone B of the Sentencing Guidelines.   It is anticipated that the Government will be asking this Court to sentence Mr. Santos Ferro at the high end of the Guideline Range to 12 months of incarceration.

Given these facts, it is the position of the undersigned that the terms of the Plea Agreement signed by Mr. Santos Ferro reflects a sufficient penalty to be imposed.

Specifically, in his Plea Agreement, Mr. Santos Ferro agreed to stipulate to a Judicial Order of Removal.  In addition he has knowingly and voluntarily waived his right to notice a hearing provided for under the law, and further waives all rights to appeal, reopen, reconsider, or otherwise challenge this Stipulated Removal Order.  Furthermore,

he has waived his right to a hearing before an Immigration Judge and he has agreed to waive his right to any and all forms of relief or protection from removal, deportation or exclusion under the Immigration and Nationality Act.  In addition, he cannot claim relief or protection from removal based upon an asylum claim.  It is believed that this Agreement is without precedent in this District.

In essence, Mr. Santos Ferro has agreed to voluntarily return to Cuba to live out his remaining years without his children or grandchildren by his side. For Mr. Santos Ferro, this is the ultimate penalty. There is no period of incarceration that would send a louder message to those thinking of committing similar crimes.

As noted earlier, Mr. Santos Ferro is in Zone B of the Sentencing Table and this Court has discretion as such.  Mr. Santos Ferro since his arrest has been on Home Detention and has not been able to leave his residence except under limited circumstances, specifically, Court Appearances, conferences with counsel and for medical necessities. Needless to say, he has been in complete compliance with the terms and conditions of release since his arrest. Since the applicable Guideline Range is in Zone B of the Sentencing Table, the minimum term of imprisonment may be satisfied by a sentence of probation that includes a condition or a combination of conditions that include substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in Section  5C1.1(c)(3)and 5C1.1(e)(3).

It is respectfully submitted that after considering all of the sentencing factors described in Title 18 U.S.C. Section 3553(a) a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in the statute would be one that does

not include incarceration, in light of the fact that Mr. Santos Ferro's punishment is agreeing to not contest in any manner his removal to Cuba, that being in and of itself the ultimate punishment.

Respectfully submitted,

By:  */s/ Albert Z. Levin, Esq.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By:  */s/ Albert Z. Levin, Esq.*

ALBERT Z. LEVIN, P.A.
Courthouse Center
40 N.W. 3rd Street, Suite 200
Miami, Florida 33128
Telephone: (305) 379-7101
Facsimile: (305) 381-6869
Florida Bar No. 316581
albert@albertlevinlaw.com